UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>　　　　　　　　　　　Plaintiff,<br>　　v.<br>CANDLESTICK CAPITAL MANAGEMENT LP,<br>　　　　　　　　　　　Defendant,<br>and<br>CANDLESTICK MASTER FUND LP and CANDLESTICK US F&F FUND LP,<br>　　　　　　　　　　　Relief Defendants. | Civil Action No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Securities and Exchange Commission (the "Commission"), alleges the following against the defendant and relief defendants:

## SUMMARY

1. This case concerns the violation of Rule 105 of Regulation M under the Securities Exchange Act of 1934 (the "Exchange Act") [17 C.F.R. § 242.105] ("Rule 105") by Candlestick Capital Management LP ("Candlestick Capital"). Rule 105 is designed to prevent potentially manipulative short selling just before the pricing of follow-on and secondary offerings, thereby allowing independent market forces to determine the price of those offerings. Rule 105 prohibits any person who makes a short sale of securities, during a defined restricted period before the pricing of an offering, from purchasing the same securities in that offering. Rule 105 prohibits such conduct irrespective of the short seller's intent in effecting the short sale.

2.      Candlestick Capital is the investment adviser to Candlestick Master Fund LP (the "Master Fund") and Candlestick US F&F Fund LP (the "F&F Fund," and, together with the Master Fund, the "Funds" or "Relief Defendants").

3.      On June 16, 2020, Candlestick Capital sold short common stock of American Airlines Group Inc. ("American Airlines") within Rule 105's restricted period in the Funds' accounts.  Candlestick Capital then purchased shares of American Airlines common stock for the Funds in a follow-on offering from a participating underwriter, without qualifying for an exception from the prohibition in Rule 105.  Candlestick Capital's conduct resulted in ill-gotten gains to the Funds of $1,620,398.50.

4.      By virtue of the foregoing conduct and as further alleged herein, Candlestick Capital violated Rule 105.

5.      The Commission seeks a final judgment ordering civil money penalties and such other relief as the Court may deem appropriate.

6.      The Commission also seeks relief against the Funds, which received the profits of Candlestick Capital's illegal trading and should not be entitled to retain those illegally-derived gains.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§78u(d) and 78aa].

8.      Venue lies in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. §78aa].  Certain of the acts, practices, transactions and courses of business alleged in this Complaint occurred within the District of Connecticut, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate

commerce, or the mails. For example, Candlestick Capital directed all of the securities transactions at issue in this case from Connecticut.

## DEFENDANT

9. Candlestick Capital Management LP is a limited partnership organized under the laws of Delaware and located in Greenwich, Connecticut. Candlestick Capital is registered with the Commission as an investment adviser, and advises the Master Fund and F&F Fund, among other private fund clients. Candlestick Capital has represented that, as of October 31, 2022, it had approximately $3 billion in assets under management.

## RELIEF DEFENDANTS

10. Candlestick Master Fund LP is a Cayman Island exempted limited partnership. The Master Fund is a private fund client of Candlestick Capital.

11. Candlestick US F&F Fund LP is a Delaware limited partnership. The F&F Fund is a private fund client of Candlestick Capital.

## OVERVIEW OF RULE 105

12. Rule 105 makes it unlawful for a person to purchase equity securities from an underwriter, broker or dealer participating in a covered public offering if that person sold short the security that is the subject of the offering during the restricted period as defined in the rule, absent an exception. 17 C.F.R. § 242.105; see Short Selling in Connection with a Public Offering, Rel. No. 34-56206, 72 Fed. Reg. 45094 (Aug. 10, 2007) (effective Oct. 9, 2007). The Rule 105 "restricted period" is the shorter of the period: (1) beginning five business days before the pricing of the offered securities and ending with such pricing; or (2) beginning with the initial filing of a registration statement or notification on Exchange Act Form 1-A or 1-E and ending with pricing. 17 C.F.R. § 242.105(a)(1) and (a)(2).

13. Generally, the offering prices of secondary and follow-on offerings are set at a discount to the stock's closing price just prior to pricing.

14. The Commission adopted Rule 105 "to foster secondary and follow-on offering prices that are determined by independent market dynamics and not by potentially manipulative activity." 72 Fed. Reg. 45094.  Rule 105 is prophylactic and prohibits the conduct irrespective of the short seller's intent in effecting the short sale.  Id.

15. Rule 105 provides an exception for a "bona fide purchase," which generally does not prohibit a person from purchasing securities in an offering even if they sold short during the Rule 105 restricted period as long as they purchase the same security in at least the same amount as they sold short during the restricted period before the offering is priced.  To qualify as a "bona fide purchase," the restricted period purchase must satisfy the following requirements: (i) the purchase is at least equivalent in quantity to the entire amount of the Rule 105 restricted period short sale(s); (ii) the purchase is effected during regular trading hours; (iii) the purchase is reported to an effective transaction reporting plan (as defined in Rule 600(b)(22) of Regulation NMS); (iv) the purchase is effected after the last Rule 105 restricted period short sale, and no later than the business day prior to the day of pricing; and (v) the person did not effect a short sale that was reported to an effective transaction reporting plan within the 30 minutes prior to the close of regular trading hours (as defined in Rule 600(b)(64) of Regulation NMS) on the business day prior to the day of pricing.  17 C.F.R. § 242.105(b).  The requirements of the bona fide purchase exception are designed to ensure transparency of the activity to the market so that the effects of the purchase can be reflected in the security's market price prior to the pricing of the offering.  See 72 Fed. Reg. 45094, 45097.

**FACTS**

16. On Tuesday, June 16, 2020, Candlestick Capital sold short a combined total of 350,000 shares of American Airlines common stock at an average price of $17.62891 per share in the Funds' accounts.

17. On Sunday, June 21, 2020, American Airlines filed a preliminary prospectus supplement to a shelf registration statement previously filed on February 19, 2020, for a follow-on offering of its common stock to be priced after the market closed on Monday, June 22, 2020 (the "Offering").

18. On Monday, June 22, 2020, the day the Offering was priced, Candlestick Capital recognized that the Funds' June 16, 2020 short sale of American Airlines common stock fell within the restricted period and that the Funds could not participate in the Offering absent a valid exception. Candlestick Capital purchased a combined total of 350,000 shares of American Airlines common stock in the Funds' accounts in the open market, during regular trading hours, in a failed attempt to fall within the terms of the bona fide purchase exception to Rule 105.

19. After the market closed on Monday, June 22, 2020, American Airlines priced the Offering at $13.50 per share.

20. The short sales that Candlestick Capital effected for the Funds occurred within the Rule 105 restricted period, which ran from Tuesday, June 16, 2020 through Monday, June 22, 2020.

21. For the Funds to meet the requirements of the Rule 105 bona fide purchase exception, they would have had to purchase at least 350,000 shares of American Airlines common stock in the open market, during regular trading hours, by the market close on Friday, June 19, 2020.

22.     Shortly after market close on Monday, June 22, 2020, Candlestick Capital submitted an indication of interest to a participating underwriter on behalf of the Funds to purchase 750,000 shares in the Offering. Later that evening, certain Candlestick Capital personnel raised concerns that Candlestick Capital may have failed to meet the conditions of the Rule 105 bona fide purchase exception.

23.     On Tuesday, June 23, 2020, Candlestick Capital nevertheless received an allocation of 750,000 shares in the Offering. Later that day, Candlestick Capital determined that it had failed to meet the bona fide purchase exception and that it violated Rule 105 by purchasing shares in the Funds' accounts to participate in the Offering.

24.     The difference between the price at which the Funds sold short 350,000 shares of American Airlines common stock during the restricted period and the price at which the Funds purchased 350,000 shares in the Offering was $1,445,118.50.

25.     The Funds also improperly received a benefit of $175,280 by purchasing the incremental 400,000 Offering shares at a discount from American Airlines' market price.

26.     Thus, the Funds received total profits of $1,620,398.50 by participating in the Offering, of which $1,565,305.83 was received by the Master Fund and $55,092.67 was received by the F&F Fund.

27.     The Funds do not have a legitimate claim to these gains from trades that violated Rule 105.

28.     Upon concluding that it had violated Rule 105, Candlestick Capital did not self-report the violation to the Commission. Candlestick Capital also did not conduct a formal review of its trading history to identify other possible Rule 105 violations, although at the time Candlestick Capital had participated in a limited number of offerings. A subsequent review

conducted by Candlestick Capital in response to the Commission staff's investigation in 2022 identified no other Rule 105 violations.

29. In addition, Candlestick Capital did not accurately document the Rule 105 violation in its books and records and only acknowledged the Rule 105 violation after the Commission staff specifically asked about it during a routine examination of Candlestick Capital in 2021.

30. Candlestick Capital has since undertaken certain remedial steps, including updating and revising its Rule 105 policies and procedures to prevent future Rule 105 violations, including related to the bona fide purchase exception.

## FIRST CLAIM FOR RELIEF
### Violation of Rule 105 of Regulation M
### (against Defendant Candlestick Capital)

31. Paragraphs 1 through 30 above are re-alleged and incorporated by reference as if fully set forth herein.

32. In connection with an offering of equity securities for cash pursuant to a registration statement filed under the Securities Act of 1933, Candlestick Capital directed short sales of securities that were the subject of the offering within the Rule 105 restricted period, and purchased the offered securities from an underwriter participating in the offering.

33. By reason of the foregoing, Candlestick Capital violated Rule 105 of Regulation M under the Exchange Act [17 C.F.R. § 242.105].

## SECOND CLAIM FOR RELIEF
### OTHER EQUITABLE RELIEF
### (against Relief Defendants)

34. Paragraphs 1 through 30 above are re-alleged and incorporated by reference as if fully set forth herein.

35. Section 21(d)(5) of the Exchange Act [15 U.S.C. §78u(d)(5)] states "[i]n any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors."

36. Section 21(d)(7) of the Exchange Act [15 U.S.C. §78u(d)(7)] states "[i]n any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement."

37. The Relief Defendants have received gains derived from Candlestick Capital's trading in violation of Rule 105 under circumstances dictating that, in equity and good conscience, they should not be allowed to retain.

38. As a result, the Relief Defendants are liable to disgorge, and should be required to return, their ill-gotten gains.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A. Order the Relief Defendants to disgorge, with prejudgment interest, all ill-gotten gains obtained by reason of the unlawful conduct alleged in the Complaint;

B. Order Defendant Candlestick Capital to pay civil penalties under Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)];

C. Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

D. Grant such other and further relief as this Court may deem just and proper.

## JURY DEMAND

The Commission demands a jury in this matter for all claims so triable.

DATED: February 17, 2023                    Respectfully submitted,

/s/ Richard M. Harper II
Anne F. Hancock (MA Bar No. 691884)
Dawn Edick (DC Bar No. 641659)
Amy Gwiazda (MA Bar No. 663494)
Richard M. Harper II (MA Bar No. 634782)
Martin F. Healey (MA Bar No. 227550)
SECURITIES AND EXCHANGE COMMISSION
Boston Regional Office
33 Arch St., 24th Floor
Boston, MA 02110
(617) 573-4560 (Hancock direct)
(617) 573 8940 (Edick direct)
(617) 573-8839 (Gwiazda direct)
(617) 573-8979 (Harper direct)
(617) 573-4590 (fax)
Hancockan@sec.gov (Hancock email)
EdickD@sec.gov (Edick email)
GwiazdaA@sec.gov (Gwiazda email)
HarperR@sec.gov (Harper email)

Local Counsel:

Michelle McConaghy
Assistant United States Attorney
Chief, Civil Division
United States Attorney's Office
Connecticut Financial Center
157 Church Street, 25th Floor
New Haven, CT  06510
(203) 821-3700
(203) 773-5373 (Facsimile)